UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISNEY ENTERPRISES, INC.<br><br>Petitioner,<br><br>v.<br><br>ICEBOX-SCOOPS, INC.<br><br>Respondent. | Case No. _____ |

**DISNEY ENTERPRISES, INC.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO QUASH</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY...................................................................................................... 2

ARGUMENT ............................................................................................................................. 5

    A.    Icebox Cannot Meet Its Threshold Burden ........................................................... 5

    B.    The Deposition Subpoena Is Duplicative and Overly Burdensome ................... 7

    C.    Icebox Should Bear The Cost Of Disney's Compliance With The Subpoenas .................. 8

CONCLUSION.......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Athalonz, LLC v. Under Armour, Inc.*,
 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024) ............................................................... 5

*Cohen v. Grp. Health Inc.*,
 2022 WL 4534552 (S.D.N.Y. Sept. 28, 2022) ............................................................... 5

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*,
 380 F.3d 849 (5th Cir. 2004) ......................................................................................... 6

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*,
 715 F. App'x 54 (2d Cir. 2017) ..................................................................................... 2

*Jackson v. AFSCME Loc. 196,*
 246 F.R.D. 410 (D. Conn. 2007) .................................................................................... 8

*Janki Bai Sahu v. Union Carbide Corp.*,
 528 F. App'x 96 (2d Cir. 2013) ..................................................................................... 7

*Linder v. Calero–Portocarrero*,
 183 F.R.D. 314 (D.D.C.1998) ........................................................................................ 8

*Powers v. Mem'l Sloan Kettering Cancer Ctr.*,
 2020 WL 5968126 (S.D.N.Y. Oct. 8, 2020) .................................................................. 8

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
 2006 WL 2996645 (S.D.N.Y. Oct. 13, 2006) ................................................................ 8

*Robertson v. People Mag.*,
 2015 WL 9077111 (S.D.N.Y. Dec. 16, 2015) ............................................................... 5

*Schonfeld v. Hilliard*,
 218 F.3d 164 (2d Cir. 2000) ................................................................................. 4, 5, 6

*Shapiro v. State*,
 61 A.D.2d 852 (1978) .................................................................................................... 6

*The Edward Andrews Grp., Inc. v. Addressing Servs. Co., Inc.*,
 2006 WL 1214984 (S.D.N.Y. May 4, 2006) ................................................................. 7

Disney Enterprises, Inc. ("Disney") submits this memorandum of law in support of its motion to quash a document subpoena, dated January 21, 2025 (Exhibit A, the "Document Subpoena")[1] and a deposition subpoena, dated March 26, 2025 (Exhibit B, the "Deposition Subpoena," together, the "Subpoenas") served by Respondent Icebox-Scoops, Inc. ("Icebox").

## PRELIMINARY STATEMENT

*Eighteen years ago*, Icebox commenced the relevant underlying action in the United States District Court for the Eastern District of New York seeking to hold Finanz St.-Honore, B.V. and Dana Classic Fragrances, Inc. (collectively, "Finanz") liable for breaching a March 1, 2005 licensing agreement (the "Licensing Agreement") (Ex. A at 11) under which Icebox had licensed a certain "Tinkerbell" trademark from Finanz.[2]  Disney's connection to Icebox's dispute with Finanz is that it purchased Finanz's Tinkerbell trademark in 2005.  Disney's registered trademark for the Tinker Bell character is "Tinker Bell" not Tinkerbell, and Disney acquired Finanz's Tinkerbell trademark solely to avoid any nuisance-value trademark infringement suits.  Icebox initiated a separate suit against Disney, which was dismissed in 2012.  Now, at the tail-end of discovery in the damages portion of the proceeding, Icebox again seeks to drag Disney back into the fray by serving two overbroad subpoenas that under controlling authority provided by Icebox's own counsel are completely unnecessary for the calculation of Icebox's damages. The Subpoenas should be quashed.

---

[1] All exhibits cited are attached to the accompanying Declaration of Jenny H. Kim ("Kim Decl."), dated July 14, 2025.

[2] *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V., et al.*, Case No. 07-cv-00544-NG-VMS (E.D.N.Y.) (the "E.D.N.Y. Action").

1

## PROCEDURAL HISTORY

Given the age of the underlying action, a brief procedural history of the case is in order. Pursuant to a March 1, 2005 licensing agreement, Finanz licensed its Tinkerbell trademark, which only pertained to products in International Class 3, to Icebox. Eight months after entering into the Licensing Agreement with Icebox, Finanz terminated the license agreement with Icebox for cause and then sold its Tinkerbell trademark to Disney. Icebox then sued Finanz for breach of the Licensing Agreement in February 2007. The case went to trial in 2016 and Icebox prevailed on its claims against Finanz. Prior to that verdict, the court found that Icebox was limited to out-of-pocket damages on both its contract and fraud claims because of the limitation of liability clause in the Licensing Agreement. *See* E.D.N.Y. Action, ECF No. 79. In November 2017, the Second Circuit reversed the decision as it related to Icebox's *contract* damages, finding that Finanz's bad faith rendered the limitation of liability clause unenforceable under applicable Pennsylvania law. *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.,* 715 F. App'x 54, 56 (2d Cir. 2017).

The matter was remanded for further proceedings, but then languished for over two years due to Icebox's failure to prosecute its case to recover damages. The court issued a show-cause order on November 16, 2020, instructing Icebox to show cause why the case should not be dismissed for failure to prosecute. *See* E.D.N.Y. Action, November 16, 2020 Order. Icebox responded on December 8, 2020, requesting that the case be stayed pending a resolution of a related matter, *Disney Enterprises, Inc. v. Finanz St. Honore, B.V.*, Case No. 13-cv-06338-NG-SMG (E.D.N.Y.), so that it could avoid expending further resources. *Id.*, ECF No. 198. Icebox is not a party to the *Disney v. Finanz* matter.

At Icebox's request, the court lifted the stay on October 8, 2024 and entered a scheduling order requiring that all fact discovery on the remaining damages issues be completed by March 31,

2025.  *See* E.D.N.Y. Action, October 8, 2024 Order.  Icebox did not serve the Document Subpoena on Disney until January 21, 2025.  The Document Subpoena demands the production of four broad categories of documents:

1. Documents and things evidencing the annual revenues generated in 2005-2010 by Disney and its licensees from domestic and foreign commercialization of products in International Class 3, wherein the products and/or packaging bear the TINKERBELL Trademark. To the extent any revenues are from licensees, the revenues from Disney and from each licensee should be broken out separately.

2. Documents and things relating to Disney's projections as of 2005, and assessments from 2005 on, of the fair market value of the intellectual property rights in the License Agreement; including, but not limited to, the value of the rights to the TINKERBELL Trademark in International Class 3 for the years 2005-2010.

3. Documents regarding the size of the market in 2005-2010 for commercialization of a line of fairy-related products in International Class 3.

4. Documents and things relating to the fair market value of the License Agreement in 2005 (and especially on or about October 31, 2005), including those relating to the cost to buy out Icebox's rights under the License Agreement.

Two months later, on March 26, 2025, Icebox served the Deposition Subpoena on Disney. The Deposition Subpoena demands the production of the same documents *and* the deposition of a corporate representative capable of testifying to five topics, four of which involve twenty years old facts and issues:

1. The fair market value, as of October 31, 2005, of exclusive worldwide rights to the Tinkerbell® Trademark in International Class 3 for the period from November 2005 to February 28, 2010.

2. The fair market value, as of October 31, 2005, of the rights in the License Agreement to the License Agreement's Tinkerbell Intellectual Property.

3. The fair market value, as of October 31, 2005, to purchase rights in the scope of the License Agreement's Tinkerbell Intellectual Property in the United States, for each year for the period November 2005 to February 2010.

4. The fair market value, as of October 31, 2005, to purchase rights in the scope of the License Agreement's Tinkerbell Intellectual Property in the foreign countries set forth in the License Agreement, for each year for the period November 2005 to February 2010.

5. The fair market value in 2024 of exclusive worldwide rights to the Tinkerbell® Trademark in International Class 3.

3

On February 25, 2025, Disney's counsel conferred with Icebox's counsel regarding the scope of the Document Subpoena. At that meet and confer, Icebox's counsel informed Disney that Icebox was seeking "lost asset damages." (*See* Kim Decl. ¶ 6) Counsel also cited the Second Circuit Court of Appeals' decision in *Schonfeld v. Hilliard*, 218 F.3d 164 (2d Cir. 2000) as authority for Icebox's entitlement to lost asset damages. (*Id.*) *Schonfeld* holds that the "best evidence" of lost asset damages is a "recent sale price for the [] asset, negotiated by parties at arm's length." *Id.* at 218 F.3d at 178. Icebox also admitted to Disney it already had a copy of the 2005 Trademark Purchase Agreement ("2005 TPA") between Disney and Finanz for the sale of the Tinkerbell trademarks.

At a subsequent meet and confer on May 5, 2025, Disney's counsel informed Icebox that, upon a review of the relevant case law that Icebox had provided, the only information that Icebox needed for its lost asset damage calculation was the price that Disney paid for the Finanz Tinkerbell trademark in October 2005. (*See* Kim Decl. ¶ 8) Since the 2005 TPA set forth that price – $3 million – and a copy of the 2005 TPA was produced to Icebox earlier in this litigation, Disney's counsel informed Icebox that Icebox's Subpoenas requested irrelevant and disproportionate information. (*Id.*) Disney's counsel also informed Icebox that Disney had reviewed documents that were related to the 2005 purchase of the Finanz Tinkerbell trademark by Disney, and that Disney had identified no documents relevant to the determination of the fair market value of the Finanz Tinkerbell trademark during any relevant time period. (*Id.* ¶ 9) Disney's counsel then informed Icebox that it believed it had complied with its obligations under the Document Subpoena, and that Icebox's Deposition Subpoena was overly burdensome and sought information that was irrelevant and disproportional to the needs of the case. (*Id.*) Icebox's counsel disagreed and

4

suggested it would seek relief from the Court. Disney's counsel also informed Icebox that it would seek relief from the court. This motion seeks that relief.[3]

### ARGUMENT

"Federal Rule of Civil Procedure 45 permits a party to command a non-party to produce documents and provide deposition testimony. . . . The issuing party 'must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *Cohen v. Grp. Health Inc.*, 2022 WL 4534552, at *2 (S.D.N.Y. Sept. 28, 2022). Although courts have "long had discretion to limit discovery requests that are disproportionate to the needs of the case," the 2015 amendment to Rule 26(b)(1) requiring proportionality serves to "exhort judges to exercise their preexisting control over discovery more exactingly." *Robertson v. People Mag.*, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015). "[W]ithin this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome." *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024).

#### A. Icebox Cannot Meet Its Threshold Burden

Icebox cannot meet its threshold burden and show that the Subpoenas seek relevant information that is proportional to the needs of the case. As discussed *supra*, Icebox represented that it is pursuing a "lost asset" theory of damages and Icebox's own cited case, *Schonfeld*, holds that the "best evidence" of the value of the asset at issue is a "recent sale price for the [] asset, negotiated by parties at arm's length." *Schonfeld*, 218 F.3d at 178. Here, Finanz's sale of its

---

[3] An earlier version of this motion was filed in the underlying action on May 5, 2025. On July 3, 2025, the court disposed of Disney's motion to quash on the basis that "'[a] court lacks jurisdiction over a motion to quash if the court is not where the place of compliance is located.'" *See Icebox-Scoops, Inc. v. Finanz St. Honore, B.V., et al.*, Case No. 07-cv-00544-NG-VMS (E.D.N.Y.), July 3, 2025 Order. The court made no findings on the merits of Disney's original motion and extended the discovery period to July 31, 2025 to allow for Disney to refile its motion in the proper district.

Tinkerbell trademark to Disney for $3 million as set forth in the 2005 TPA – which is already in Icebox's possession – provides the best evidence of the value of the asset that Icebox lost. *See also Fluorine On Call, Ltd. v. Fluorogas Ltd.,* 380 F.3d 849, 861 (5th Cir. 2004) ("In short, under *Schonfeld,* the market value is determined by considering what a hypothetical buyer would pay for the chance to earn future profits. And the best evidence of this value is an actual sale of the asset.") Indeed, under *Schonfeld*, only "special circumstances . . . would negate the [the relevance of] a prior arm's length purchase price." *Id.* Here, there are no such special circumstances and Icebox has not identified any. *Shapiro v. State*, 61 A.D.2d 852, 853 (1978) (noting that "special circumstances" would include a "drastic" change in the "economic situation.") Considering that Icebox already has in its possession, the "best evidence" necessary for the calculation of its remaining damages, the Subpoenas seek information that is either irrelevant or disproportionate to the needs of the case to the extent it seeks any further information about the fair market value of the Licensing Agreement or trademark rights in 2005. (*See* Ex. A, Document Subpoena Requests No. 4 and Ex. B, Deposition Subpoena Topics Nos. 1-4)

The remaining requests are also irrelevant to Icebox's damages and disproportional to the needs of this case. One of the deposition topics seeks testimony about the "fair market value in 2024 of exclusive worldwide rights to the Tinkerbell® Trademark in International Class 3." (Ex. B, Topic No. 4) The fair market value of the trademark rights nineteen years after the 2005 TPA was executed are completely irrelevant to Icebox's calculation of its 2005 "lost asset" damages. Three other requests seek documents about *Disney's* annual revenue and *Disney's* projections related to the right to exploit the Tinkerbell trademark, which Disney does not use, or "fairy-related

6

products"[4] in International Class 3. (*See* Ex. A, Requests Nos. 1-3) But there is simply no comparison between Disney and Icebox and their respective uses of their marks. The Walt Disney Co. generated over $32 billion in annual revenue in 2005 and has held multiple trademarks in the Tinker Bell character since 1953. What Disney did or could have done with *Disney*'s trademarks in the Tinker Bell character between 2005 and 2010 has no bearing on what Icebox could have done with Finanz's Tinkerbell trademark in 2005.

### B. The Deposition Subpoena Is Duplicative and Overly Burdensome

In addition to seeking information that is irrelevant and not proportional to Icebox's lost asset damages, the Deposition Subpoena should be quashed for two additional reasons.

*First*, the request for deposition testimony is overly burdensome considering that Disney does not currently have an employee capable of testifying to the noticed topics. Not surprisingly, no present Disney employee has contemporaneous personal knowledge of the fair market value of Finanz's Tinkerbell trademark in October 2005. *See Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 103 (2d Cir. 2013) (affirming district court ruling refusing to permit a 30(b)(6) deposition that "would require Defendants to prepare witnesses to respond to questions regarding events that took place between fifteen and thirty-five years ago").

*Second*, the deposition testimony is duplicative of information that is in Icebox's possession (*i.e.*, the relevant information regarding the value of Icebox's "lost asset"). *See Janki Bai Sahu,* 528 F. App'x at 103 (affirming that document discovery "is a more convenient, less costly, and less burdensome alternative" to the "cumulative" 30(b)(6) depositions); *Powers v.*

---

[4] This latter request should also be quashed for being overly broad and vague. *See The Edward Andrews Grp., Inc. v. Addressing Servs. Co., Inc.*, 2006 WL 1214984, at *1 (S.D.N.Y. May 4, 2006) (granting motion to quash document request on vagueness grounds).

*Mem'l Sloan Kettering Cancer Ctr.*, 2020 WL 5968126, at *3 (S.D.N.Y. Oct. 8, 2020).  Preparing a witness to testify about information that is evident from the face of documents is exactly the type of "undue burden" that Rule 45 protects against.  Fed. R. Civ. P. 45(d)(1).

    **C.** **Icebox Should Bear The Cost Of Disney's Compliance With The Subpoenas**

    If the Court rules that Disney should either produce documents or a witness in response to the Subpoenas, Disney requests that the Court order Icebox to bear the costs of complying with the Subpoenas.  Under Rule 45, "a non-party can be required to bear some or all expenses where the equities of a particular case demand it."  *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, 2006 WL 2996645, at *2 (S.D.N.Y. Oct. 13, 2006).  "The relevant factors employed to determine how much of the production expense the requesting party should bear include whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance."  *Id.* at *2 (quotations omitted).

    Here, Disney has no interest in the outcome of the litigation, and there is no public interest at stake.  Further, as Icebox already has all the information it needs, if it wants more, it should have to shoulder the burden of its own fishing expedition.  *See Jackson v. AFSCME Loc. 196,* 246 F.R.D. 410, 413 (D. Conn. 2007) (ordering plaintiff to bear the cost of compliance and noting "when non-parties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material") (quoting *Linder v. Calero–Portocarrero*, 183 F.R.D. 314, 322–23 (D.D.C.1998)).

## **CONCLUSION**

The Court should quash the Subpoenas in their entirety, but if the Court orders that Disney comply with the Subpoenas, it should order Icebox to bear the costs of that compliance.

Dated: July 14, 2025						Respectfully submitted,

							**BOIES SCHILLER FLEXNER LLP**

							*Jenny H. Kim*
							Jenny H. Kim
							Jeffrey P. Waldron (*pro hac vice* forthcoming)
							55 Hudson Yards
							New York, NY 10001
							Tel: (212) 446-2300
							Fax: (212) 446-2350
							jkim@bsfllp.com
							jwaldron@bsfllp.com

							*Attorneys for Disney Enterprises, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPESTYLE REQUIREMENTS

    I, Jenny H. Kim, counsel for Petitioner Disney Enterprises, Inc., certify, pursuant to Southern District of New York Local Rule 7.1, that the foregoing memorandum of law is proportionately spaced, has a typeface of 12 points and contains 3,011 words, excluding the parts of the document exempted by Local Rule 7.1(c).

Dated: July 14, 2025

By: /s/ *Jenny H. Kim*
    Jenny H. Kim