**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DISNEY ENTERPRISES, INC.<br><br>Petitioner,<br><br>v.<br><br>ICEBOX-SCOOPS, INC.<br><br>Respondent. | Case No. 25-mc-300 |

**DISNEY ENTERPRISES, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO QUASH**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..................... ii

ARGUMENT ..................... 1

I. Disney's Motion Should Be Considered And No Objections Were Waived ..................... 1

A. Disney's Conduct Excuses Any Lack Of Timeliness Of This Motion ..................... 1

B. Disney And The Walt Disney Company Did Not Waive Its Objections ..................... 3

II. The Walt Disney Company Has No Responsive Documents ..................... 4

III. The Documents And Testimony Icebox Seeks Remains Irrelevant ..................... 5

A. The Document Subpoena Seeks Irrelevant Information ..................... 5

B. The Deposition Subpoena Seeks Irrelevant Testimony ..................... 6

IV. Disney's Fees Should Be Shifted to Icebox ..................... 7

V. Disney Should Not Be "Warned of Contempt" ..................... 8

CONCLUSION ..................... 8

## TABLE OF AUTHORITIES

**Cases**

*Baez v. City of Schenectady*,
2017 WL 4990646 (N.D.N.Y. Nov. 1, 2017) ........ 8

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D 44 (S.D.N.Y. 1996) ........ 3

*First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship*,
184 F.R.D. 234 (S.D.N.Y. 1998) ........ 7

*Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*,
No. 00 CIV. 5056 (RO), 2001 WL 1135620 (S.D.N.Y. Sept. 26, 2001) ........ 1

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
2017 WL 467680 (S.D.N.Y. Oct. 17, 2017) ........ 3

*In re FourWorld Event Opportunities Fund, L.P.*,
2023 WL 3375140 (S.D.N.Y. May 11, 2023) ........ 4

*In re Honeywell Int'l, Inc. Sec. Litig.*,
230 F.R.D. 293 (S.D.N.Y. 2003) ........ 7

*Janki Bai Sahu v. Union Carbide Corp.*,
528 F. App'x 96 (2d Cir. 2013) ........ 7

*Nike, Inc. v. Wu*,
349 F. Supp. 3d 310, 320 (S.D.N.Y.), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ........ 1

*Schonfeld v. Hilliard*,
218 F.3d 164 (2nd Cir. 2000) ........ 5

Disney Enterprises, Inc. ("Disney") respectfully submits this reply in further support of its motion to quash a Document Subpoena, dated January 21, 2025 (Ex. A) and a Deposition Subpoena (Ex. B),[1] dated March 25, 2025 served by Respondent Icebox-Scoops, Inc. ("Icebox").

**ARGUMENT**

## I. Disney's Motion Should Be Considered And No Objections Were Waived

### A. Disney's Conduct Excuses Any Lack Of Timeliness Of This Motion

Although motions to quash generally should be filed by the return date of the subpoena, courts in this District exercise broad discretion and consider such motions when, as here, there is "a combination of circumstances such as an overbroad subpoena that exceeds the bounds of fair discovery, a non-party acting in good faith, and communication between the parties." *Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 CIV. 5056 (RO), 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (holding that "overlooking the issue of timeliness is appropriate" when such circumstances were present). *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y.), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ("Still, district courts have broad discretion over the decision to quash a subpoena, and a number of courts in this Circuit have exercised their discretion to consider motions to quash that were not timely filed within the meaning of Rule 45 and applicable case law.") (quotation marks and citations omitted).

Here, the same three circumstances exist. First, as set forth in Disney's opening brief, both Subpoenas are plainly overbroad and seek irrelevant information. (Mot. at 5-8) For example, the Document Subpoena requested documents related to *all* "fairy-related products," not just products related to Tinker Bell, and the deposition subpoena sought testimony about the value twenty years

[1] Exhibits A and B are attached to the Declaration of Jenny Kim, dated July 14, 2025 and submitted in support of Disney's motion to quash. Exhibits C through E are attached to the Second Declaration of Jenny Kim, dated August 8, 2025 and submitted in support of this reply.

ago of trademarks that Disney *does not use*. Second, Disney engaged in an extensive meet and confer process in an attempt to narrow the scope of the Subpoenas. In addition to numerous emails, Disney engaged in four meet and confer calls with Icebox's counsel. Third, Disney retrieved and searched through boxes of almost twenty-year old documents related to the 2005 purchase of the Finanz Tinkerbell trademark by Disney in an effort to identify documents relevant to Icebox's calculation of damages and found no relevant documents.

Disney informed Icebox that no relevant documents had been identified besides the 2005 Trademark Purchase Agreement, which was already in Icebox's possession and which was the only document that Icebox needed to prove its lost asset damages pursuant to a decision that Icebox had provided to Disney during the course of these meet and confers. (Mot. at 4) However, Icebox would not accept Disney's representation, reiterated its request for every document responsive to its overbroad subpoena (many of which would never lead to documents relevant to the question of Icebox's damages), and threatened to seek relief from the Court. Only then did Disney file its motion to quash in the Eastern District of New York rather than respond defensively to the motion to compel that Icebox clearly intended to file.[2]

Under these circumstances, Disney respectfully submits that Disney appropriately held off filing this motion to engage in repeated good faith efforts to reach an agreement with Icebox on the scope of the subpoena without seeking relief from the Court. Had Icebox filed a motion to compel, Disney's arguments regarding the overbreadth and relevance of the Subpoenas would have been the same as those presented here.

---

[2] Icebox takes issue with the quick turnaround between the parties' final meet and confer and the filing of Disney's original motion to quash. (Opp. at 6) Based on Icebox's prior insistence that Disney must have relevant information, Disney's counsel suspected that the good faith efforts to meet and confer concerning the Subpoenas would fail. That prediction was accurate and Disney filed its original motion to quash as soon as it became clear that the parties were at impasse.

**B. <u>Disney And The Walt Disney Company Did Not Waive Its Objections</u>**

For the same reasons set forth above, Disney and The Walt Disney Company ("TWDC") did not waive their objections to the document subpoenas directed at them. Courts do not consider objections to a subpoena waived if, as here, "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery, (2) the subpoenaed witness is a non-party acting in good faith, and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena." *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806, at *17 (S.D.N.Y. Oct. 17, 2017) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D 44, 48 (S.D.N.Y. 1996)).

In addition to the facts discussed *supra* that demonstrate that all three elements are met here,[3] Icebox's counsel – Morris Cohen – knew that Jenny Kim of Boies Schiller Flexner was counsel for Disney in December 2023. (Ex. C) Despite this knowledge, Mr. Cohen failed to notify Ms. Kim of the document subpoenas and instead served them on Disney and TWDC through their offices in Burbank, California. Unfortunately, the subpoenas were not forwarded to Ms. Kim prior to the return date. Although he had failed to notify Disney's counsel that the subpoenas had been served as one would expect from an experienced practitioner, Mr. Cohen nevertheless emailed Ms. Kim on February 12, 2025 – two days after the return date – to inquire about Disney and TWDC's response to the two subpoenas directed at Disney and TWDC. (Ex. D at 2) Ms. Kim informed Mr. Cohen that she had not yet received the subpoenas and that she would inquire with her client. (*Id.* at 1) Later that day, Ms. Kim advised Mr. Cohen that she now had copies of the subpoenas and that she would serve responses on Mr. Cohen on February 14 – two days after she had received

[3] The document subpoena served on TWDC includes requests that are identical to the Document Subpoena served on Disney, and is thus equally overbroad. (Exs. A and B)

the document subpoenas. (*Id.*) Mr. Cohen thanked Ms. Kim, and did not object to the two-day extension. (*Id.*) Then, on February 18, Mr. Cohen contacted Ms. Kim to schedule a meet and confer to discuss Disney and TWDC's responses to the document subpoenas. (Ex. E) At no time during that call, or any of the others that followed, did Mr. Cohen take the position that Disney and TWDC had waived any of their rights with respect to the subpoenas

Under these facts, it is the definition of bad faith for Icebox to now claim that Disney and TWDC waived their objections to the document subpoenas because they failed to object by the return date.

## II. <u>The Walt Disney Company Has No Responsive Documents</u>

It is well-established that "a corporate parent's mere ownership of a subsidiary" is not a "dispositive factor" in determining whether the documents belonging to the subsidiary are in the possession, custody, or control of the parent. *In re FourWorld Event Opportunities Fund, L.P.*, 2023 WL 3375140, at *2 (S.D.N.Y. May 11, 2023). "In determining a parent's control over a subsidiary in this context, district courts in this Circuit consider (1) the degree of ownership and control exercised by the parent over the subsidiary, (2) a showing that the two entities operate as one, (3) demonstrated access to documents in the ordinary course of business, and (4) an agency relationship." *Id.* Icebox addresses none of these factors in its opposition to show that TWDC has access to the documents it seeks.

In fact, as Icebox knows from TWDC's objections to the January 21, 2025 document subpoena, Disney Enterprises, Inc. – not The Walt Disney Company – purchased the Finanz Tinkerbell trademark that is the subject of Icebox's litigation against Finanz and that Disney Enterprises holds Disney's Tinker Bell trademark. TWDC also made clear in its objections that it was *not* in possession of the documents sought by Icebox and Icebox never questioned that

representation during multiple meet and confers with Disney's counsel. Because Icebox failed to challenge TWDC's objection that it was not in possession of documents responsive to Icebox's subpoena during the ten weeks of meet and confers with TWDC's counsel, Icebox has now conceded that point.

Indeed, the first time that Icebox has challenged that objection is in opposition to Disney's motion to quash the subpoenas and Icebox only does so by asserting in conclusory fashion that TWDC must have access to documents responsive to the subpoena. As discussed *supra*, this is insufficient. Icebox must have shown (1) "the degree of ownership and control exercised by [TWDC over Disney]", "(2) a showing that the two entities operate as one, (3) demonstrated access to documents in the ordinary course of business, and (4) an agency relationship." *Id.* Because Icebox failed to make that showing – and it cannot – Icebox's improper request that TWDC produce documents that it does not have should be disregarded by the Court.

## III. <u>The Documents And Testimony Icebox Seeks Remains Irrelevant</u>

### A. <u>The Document Subpoena Seeks Irrelevant Information</u>

As set forth extensively in Disney's opening brief, the Document Subpoena seeks irrelevant information as the *only* relevant data point for the calculation of Icebox's "lost asset" damages is the price that Disney paid for the Finanz Tinkerbell trademark in 2005. (Mot. at 5-7) That sale price constitutes the "best evidence" of the value of that asset under the prevailing authority that Icebox itself has cited to Disney throughout the meet and confer process and in its opposition to the motion to quash. *See Schonfeld v. Hilliard*, 218 F.3d 164, 178 (2nd Cir. 2000). Icebox's only argument to the contrary is that Finanz sold the Tinkerbell trademark to Disney for well under its fair market value because Finanz was "deeply in debt to the tune of millions of dollars" at the time

of the sale (Opp. at 3); however, Icebox offers no support for that argument aside from the say-so of its own attorney based off conversations that occurred over a decade ago. (ECF 9 ¶ 26)

Icebox argues that the prices set forth in the 2005 Trademark Purchase Agreement cannot represent the fair market value of "the rights to the famous Tinkerbell mark" because Disney purchased it for a three million dollar "pittance." (Opp. at 12) But of course the Finanz Tinkerbell trademark is *not* famous – it is a knock-off of the Tinker Bell trademark that has accrued substantial goodwill over the decades that Disney has used it.[4] Disney purchased the Finanz Tinkerbell trademark in order to prevent nuisance trademark infringement suits. Disney does not currently and never has used the Finanz Tinkerbell trademark. It is unsurprising that the value of that mark would be substantially less than that of the classic Tinker Bell trademark. For the same reason, documents related to the Tinker Bell trademark rather than the Finanz Tinkerbell trademark are not relevant to the determination of Icebox's damages.

**B. <u>The Deposition Subpoena Seeks Irrelevant Testimony</u>**

Icebox also claims that the Deposition Subpoena seeks information that is "relevant and warranted," but identifies exactly zero unique information that Icebox could gain from a deposition of a Disney witness. Even if the information sought by the Document Subpoena was relevant, the testimony of a witness would be entirely duplicative of the evidence contained in those documents. As Icebox concedes in its opposition, Disney would have to educate a witness using the same sorts of documents that Icebox is now demanding Disney produce because there is no one at Disney

---

[4] Icebox points to a 2002 settlement agreement between Disney and Finanz (among other parties) as proof that the Tinkerbell and Tinker Bell marks are indistinguishable. In the agreement Disney agreed not to challenge the registration of the "Tinkerbell" trademark for children's cosmetics, fragrances, and toiletries in Class 3 but retained its rights to challenge the registration of the "Tinker Bell," "Tinkerbell" or "Tink" marks in all other categories. This is standard brand-protection and says nothing about the equivalence of the marks, Disney's intent to use the Finanz Tinkerbell trademark, or the value of the Finanz Tinkerbell trademark.

with contemporaneous knowledge of the fair market value of the Finanz Trademark in 2005. Thus, the testimony of a witness is unnecessary. Icebox's counsel can read the same documents as a hypothetical Disney witness. As the authority cited in Disney's opening brief (which Icebox failed to engage with) explains, "a court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered." *Janki Bai Sahu v. Union Carbide Corp.*, 528 F. App'x 96, 104 (2d Cir. 2013). Here, Icebox does not even offer speculation as to what evidence the deposition testimony could yield, it just makes demands.

## IV. Disney's Fees Should Be Shifted to Icebox

Icebox insists that Disney should have to bear the costs of complying with the Subpoenas primarily because Disney has "acted in bad faith" and because Disney "is not a classic disinterested nonparty." (Op. at 16-17) (quoting *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003)). Neither argument moves the needle.

First, Disney has complied with its discovery obligations fully. Just because Disney now seeks relief from Icebox's continued and unreasonable demands – even after Disney conducted an extensive and diligent search for responsive documents – does not mean that Disney has acted in bad faith.

Second, Disney was admittedly involved in the purchase of the Finanz Tinkerbell trademark *twenty years ago,* but it has then spent the last two decades trying to extricate itself from this dispute. The fact that Icebox unsuccessfully sued Disney in 2010 does not make Disney an interested party here. Indeed, it suggests that Disney's involvement in this dispute should have terminated long ago. Icebox cites *First Am. Corp. v. Price Waterhouse Ltd. Liab. P'ship*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998) to support its argument that Disney's involvement in the original

transaction prevents the Court from shifting the cost of Disney's compliance to Icebox. But even there, a portion of the fees associated with compliance were shifted to the subpoenaing party. *Id.* at 243.

Finally, the resources at Disney's disposal does not provide Icebox carte blanche to leech off Disney. Icebox must internalize the costs of its overbroad and unnecessary discovery demands to uninterested, non-parties.

## V. Disney Should Not Be "Warned of Contempt"

"An order of contempt leading to the imposition of sanctions is a drastic remedy." *Baez v. City of Schenectady*, 2017 WL 4990646, at *3 (N.D.N.Y. Nov. 1, 2017). Such an order is not appropriate here. Disney has at all times acted in good faith and complied with its discovery obligations. Disney objected to the Document Subpoena as soon as it was brought to the attention of Disney's outside counsel. Disney then conferred with Icebox on *four* different occasions regarding both the Document Subpoena and the Deposition Subpoena. Then Disney retrieved and searched through boxes of documents to identify relevant information, of which there was none. Icebox's frustration is not grounds to hold Disney in contempt.

## CONCLUSION

For the reasons set forth above and in Disney's opening brief, the motion to quash should be granted in its entirety.

Dated: August 8, 2025

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

*/s/ Jenny H. Kim*

Jenny H. Kim
Jeffrey P. Waldron (*pro hac vice* forthcoming)
55 Hudson Yards
New York, NY 10001
Tel: (212) 446-2300
Fax: (212) 446-2350
jkim@bsfllp.com
jwaldron@bsfllp.com

*Attorneys for Disney Enterprises, Inc.*